UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
EDWARD LAUER,

                     Plaintiff,

    -against-

SAYBOLT LP, A Foreign Limited            MEMORANDUM AND ORDER
Partnership, CORE LABORATORIES LP,       09-CV-3442 (ILG)
A Foreign Limited Partnership and CORE
LABORATORIES, INC., A Foreign
Corporation,

                     Defendants.
---------------------------------------------------x

GLASSER, United States Senior District Judge:

      Plaintiff Edward Lauer ("Lauer") brings this putative class action for unpaid overtime against his former employer, Saybolt LP, and related entities Core Laboratories LP and Core Laboratories, Inc.[1]  This Court's jurisdiction is predicated on the diversity of the parties.  Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint on the grounds that this action is preempted by federal law and, alternatively, that Lauer's claims are time-barred under New Jersey labor law.  Defendants also move pursuant to 28 U.S.C. § 1404(a) to transfer venue of this action to New Jersey.  For the reasons discussed below, defendants' motion to transfer venue is granted and this action is transferred to the United States District Court for the District of New Jersey.

---

[1]  For convenience, this Order will refer to all of the defendants, collectively, as "Saybolt."

1

**BACKGROUND**

Lauer, a resident of Staten Island, worked for Saybolt as an oil, gas and chemical ("OGC") inspector for at least two years.[2] In this capacity Lauer would measure the quality and quantity of oil samples from various sources. Plaintiff's Memo. of Law In Opposition ("Opp.") at 3. He was "employed out of" Defendants' Linden, New Jersey office, Compl. ¶ 24, which deployed OGC Inspectors to petroleum storage terminals and refineries in the New York and New Jersey harbor area. See Certification of John Barbarise ("Barbarise Cert."), dated Sept. 18, 2009, at ¶ 6. One of these facilities to which Lauer was deployed was the "Stapleton Anchorage" located near the Verrazano Bridge in New York Harbor. Compl. ¶ 24; Barbarise Cert. ¶ 23. Lauer alleges that he spent a "substantial" or "significant" amount of time working for Saybolt in New York state. Compl. ¶¶ 3, 24; Declaration of Edward Lauer ("Lauer Decl."), dated Nov. 9, 2009, at ¶ 5. According to Lauer's time records submitted by Saybolt in support of its motion, Lauer worked in New York on 68 of the 439 days of his employ with Saybolt, or 15.5% of working days, the "bulk" of which was performed at the Stapleton Anchorage. See Barbarise Cert. ¶ 23, Ex. B. (Part 1).

The nature of Lauer's work often required him to work in excess of forty hours per week. Lauer claims that under New York law he was thus entitled to, but did not

---

[2] The parties disagree as to the length of Lauer's employment with Saybolt. The complaint contains blank spaces for the beginning and end dates. See Compl. ¶¶ 23, 29. Lauer states in a declaration that he worked at Saybolt from March 2001 to December 2004. See Declaration of Edward Lauer ("Lauer Decl."), dated Nov. 9, 2009 (attached as Ex. C to Plaintiff's Memorandum of Law). Saybolt asserts that Lauer was employed there from December 2002 to December 2004. See Certification of John Barbarise ("Barbarise Cert."), dated Sept. 18, 2009, at ¶ 20. This discrepancy is irrelevant to the Court's disposition of this motion.

receive, overtime compensation equal to one and one-half times his regular hourly rate, or "time and a half," for each hour worked in excess of forty hours per week.  Compl. ¶¶ 33-37.  Lauer also claims that under New York law he was entitled to, but did not receive, "spread of hours" pay equal to one hour's pay at minimum wage for each workday exceeding ten hours.³  Id.  Finally, Lauer claims that Saybolt failed to maintain time records and to post information concerning employees' rights to a minimum wage and to overtime pay, as required by New York law and the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.⁴

In addition to himself, Lauer seeks to represent a class pursuant to Rule 23 of the Fed. R. Civ. P.  He defines this putative class as "all persons who were employed by Defendants at any time since May 26, 2002, to the entry of judgment in this case (the "Class Period"), who were non-exempt employees within the meaning of the New York Labor Law and have not been paid for overtime wages as required in violation of the New York Labor Law."  Compl. ¶ 15.  Lauer estimates the size of the proposed class at approximately 100 members but alleges that the necessary facts to determine the precise number of class members "are presently within the sole control of the Defendants."  Id. ¶ 16.

---

³  Under New York law, employees are entitled to an additional one hour's pay at minimum wage for any day in which the spread of hours exceeds 10 hours.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 (2009).  "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty." Id. § 142-2.18.

⁴  Lauer concedes in his motion papers that his FLSA record-keeping claims are time-barred.  Opp. at 1 n.1.

3

Saybolt does not have an office in New York state and most of the petroleum storage facilities serviced by the New Jersey office are located in New Jersey. Barbarise Cert. ¶¶ 3, 6. On average, OGC Inspectors from the New Jersey office spend 85% of their time working in New Jersey, with the balance of work performed in New York and Connecticut. Id. ¶ 7. Saybolt hires its inspectors in New Jersey, and its supervisors, managers and paperwork are located there. Id. ¶ 9. Inspectors receive their assignments and pay, and file their paperwork, in New Jersey. Id. They submit the samples they collect for testing in New Jersey. Id.

In its motion to dismiss, Saybolt asserts primarily that Lauer's state law claims are preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. However, Saybolt also moves to transfer this action to New Jersey pursuant to 28 U.S.C. § 1404(a). Because the Court determines that a transfer of venue is appropriate, it will not address Saybolt's motion to dismiss.

## DISCUSSION

### I.     Standard of Review for Motion to Transfer Venue

28 U.S.C. § 1404(a) gives a district court the discretion "to transfer any civil action to any other district or division where it might have been brought." A motion under § 1404(a) is to be decided with reference to convenience and fairness under the circumstances of each particular case. See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006); In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir.1992). The purpose of § 1404(a) is to "prevent waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'"

4

Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26, 27 (1960)).

To determine whether or not a venue transfer motion should be granted, the Court must follow a two-step test.  First, the Court must determine whether or not the action "might have been brought" in the proposed transferee district.  See Jones v. United States, No. 02 Civ. 1017, 2002 WL 2003191, at *2 (E.D.N.Y. Aug. 26,2002); Hernandez v. Graebel Van Lines, 761 F.Supp. 983, 986 (E.D.N.Y.1991).  Second, the Court, using its discretion, must employ a multi-factor test to determine if, on balance, the equities favor transfer. Although not exhaustive, the factors include: (1) convenience of the parties; (2) convenience of witnesses; (3) relative means of the parties; (4) locus-operative facts and relative ease of access to sources of proof; (5) availability of process to compel the attendance of witnesses to testify at trial; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and finally (10) the interests of justice.  See Zaitsev v. State Farm Fire & Cas. Co., No. 05 Civ. 2098, 2005 WL 3088326, at *1 (E.D.N.Y. Nov. 17, 2005) (Glasser, J.) (citing United States Fidelity and Guaranty Co. v. Republic Drug Co., 800 F.Supp. 1076 (E.D.N.Y.1992)).  The Court analyzes the above factors in four categories: (1) Party considerations, (2) Witness and evidentiary considerations, (3) Forum considerations, and (4) Public Interest considerations.  See Zaitsev, 2005 WL 3088326, at *1.

In order to succeed on its motion to transfer, Saybolt must make a "clear-cut showing" that venue should be transferred for the motion to be granted.  See, e.g., Merkur v. Wyndham Intern., Inc., No. 00 Civ. 5843, 2001 WL 477268, at *2 (E.D.N.Y.

5

Mar. 30, 2001) (citing Schieffelin & Co. V. Jack Co. Of Boca, Inc., 725 F.Supp. 1314, 1321 (S.D.N.Y.1989)); Snyder v. Madera Broadcasting, Inc., 872 F.Supp. 1191, 1199 (E.D.N.Y. 1995) (citing St. Cyr v. Greyhound Lines, Inc., 486 F.Supp. 724, 727 (E.D.N.Y. 1980)). Despite this demand, it is well-established that the district court has broad discretion in deciding a motion to transfer venue. See D.H. Blair & Co., 462 F.3d at 106 (citing In re Cuyahoga, 980 F.2d at 117)).

## II.     This Action "Might Have Been Brought" in the District Court of New Jersey

Lauer does not dispute, and the Court finds, that the District of New Jersey is a district where this action "might have been brought" originally. In this civil action, the question of whether venue is initially proper is governed by 28 U.S.C. § 1391(a), which provides, in relevant part:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

It is undisputed that a substantial part of the events or omissions giving rise to Lauer's claims occurred in New Jersey. Saybolt has its principal place of business in New Jersey, from which it hires and manages its workforce. Most of the job sites to which Saybolt sends its inspectors are located in New Jersey. The records submitted by Saybolt in support of its motion indicate that Lauer spent approximately 85% of his

working hours in New Jersey. Notwithstanding Lauer's many references to the "significant" or "substantial" amount of time he spent working in New York, he does not dispute the accuracy of Saybolt's numbers.[5] Accordingly, the District of New Jersey a proper venue under § 1391(a)(2).

### III. Defendants Have Made A "Clear-Cut Showing" That Venue Should Be Transferred

After consideration of the relevant factors the Court finds that Saybolt has made a clear-cut showing that this case should be transferred to New Jersey. As a prelude to its analysis of the relevant factors, the Court notes (as have the parties) the striking similarities between the facts of this case and those before Chief Judge Dearie in <u>Adeva v. Intertek USA Inc.</u>, No. 07 Civ. 5012, 2009 WL 648620 (E.D.N.Y. Mar. 10, 2009). In that case, a New Jersey resident brought a proposed collective and class action against his New Jersey-based employer alleging overtime violations under New York Labor Law and the federal Fair Labor Standards Act. As in this case, the named plaintiff was employed by the defendant's New Jersey office but "allegedly perform[ed] some of his duties in Richmond County, New York," received his assignments from New Jersey-based managers, was paid in New Jersey, and spent most of his working time in New Jersey. <u>Id</u>. at *1. Judge Dearie granted the defendants motion to transfer the case to the District of New Jersey, finding that the "tenuous ties between the case and New York must be severed." <u>Id</u>. at *3. For the reasons discussed in more detail below, the Court

---

[5] The parties dispute whether 15.5% amounts to a "substantial" proportion of hours worked. <u>See</u> Opp. 15; Reply 15. There appears to be no dispute, however, that the 15.5% figure is the correct proportion of hours spent by Lauer working in New York state.

finds that the main difference between <u>Adeva</u> and this case – Lauer's New York residence – does not suggest a different result and that, accordingly, this case is appropriately heard before the New Jersey district court.

### A. Party Considerations

Here, the Court considers the convenience to the parties, the relative means of the parties, and the weight accorded the plaintiff's choice of forum. Lauer is an individual residing in this district. Saybolt is a limited partnership with offices in New Jersey but not in New York. Saybolt is clearly the party with greater economic means. However, this Court has previously taken judicial notice of the "scant" 13-mile distance between this courthouse and the District of New Jersey's Newark district court. <u>Zaitsev</u>, 2005 WL 3088326, at *2. Given this short distance, the Court finds that the convenience of either of the parties would not be substantially affected by a transfer to New Jersey. Lauer argues that a transfer to New Jersey would merely shift the inconvenience of travel from Saybolt to himself. However, <u>Friedman v. Schwartz</u>, No. 08 Civ. 2801, 2009 WL 701111 (E.D.N.Y. Mar. 13, 2009) which Lauer cites in support of his position is hardly apposite as in that case the choice of fora was between the Eastern District of New York and the Southern District of Florida. <u>Id</u>. at *8. The distance between the Brooklyn and Newark courthouses is negligible in comparison to the distances involved in that case.

Lauer correctly points out that, generally speaking, a plaintiffs' choice of forum should be given "substantial consideration." <u>A. Olinick & Sons v.. Dempster Bros. Inc.</u>, 365 F.2d 439, 445 (2d Cir.1966); <u>In re McDermott Intern., Inc. Securities Litigation</u>, 2009 WL 1010039, at *2 (S.D.N.Y.Apr. 13, 2009). However, the "plaintiff's choice of

8

forum is a less significant consideration in a . . . class action than in an individual action." In re Hanger Orthopedic Group, Inc. Securities Litigation, 418 F.Supp. 2d 164, 170 (E.D.N.Y. 2006) (quoting Warrick v. General Electric Co., 70 F. 3d 736, 741 n. 7 (2d Cir. 1995)). Lauer purports to represent a class of approximately 100 people who, like himself, were not paid overtime wages in accordance with New York Labor Law. According to Saybolt, inspectors such as Lauer that are hired to work in the New Jersey Office spend on average 85% of their time working in New Jersey. Because any reasonably foreseeable class spends the substantial majority of its time working in New Jersey, the Court concludes that it would be more convenient were this case to be litigated in New Jersey.

In light of these factors, party considerations favor a transfer of venue to New Jersey.

### B. Witness and Evidentiary Considerations

The Court must also consider the convenience of the witnesses to the case and the locus of operative facts and sources of proof. Consideration of such factors in this case tips in favor of a New Jersey venue. Neither Lauer nor Saybolt identify specific nonparty witnesses who could be expected to participate in this litigation. As with the likely class members, one might reasonably infer that New Jersey is a preferable forum for any Saybolt employees who become nonparty witnesses in this case. However, the Court will not draw this inference based solely upon Saybolt's supposition that this case "may come to subsume untold numbers of New Jersey residents who would prefer the matter to proceed in the District of New Jersey." Def. Reply Memo. of Law ("Reply") at 14-15. Such an assumption neither assists the court in identifying specific nonparty witnesses nor in weighing the convenience to them of a transfer.

However, the location of the likely sources of proof in this case tips the balance of convenience in favor of a New Jersey venue. One may reasonably surmise that the sources of proof in this case will consist largely of Saybolt employees' time and activity records. Lauer alleges that Saybolt maintains "sole control" of the relevant documents in this matter, Compl. ¶¶ 16, 31, and it is undisputed that Saybolt keeps these records in New Jersey.[6] Lauer approximates the size of the class he seeks to represent at approximately 100 employees and seeks damages for the period from May 26, 2002 until entry of judgment. Documentary evidence of times and locations worked for that number of employees over a period of eight or more years could easily become "so voluminous that their transport is a major undertaking." Cf. Met-L-Wood Corp. v. SWS Industries, Inc., 594 F.Supp. 706, 710 (N.D. Ill. 1984). Accordingly, evidentiary factors weigh in favor of a transfer to New Jersey.

### C. Forum Considerations

Next the Court considers the importance of having the case heard in the district in which it arose. Cases should be tried in a forum at home with the governing law. Zaitsev, 2005 WL 3088326, at *4. Here, the parties dispute whether New York or New Jersey labor law apply to Lauer's claims. In light of its ultimate decision to transfer this case the Court leaves the choice of law determination to the New Jersey district court in the first instance. However, the Court shares the "fundamental[ ]" concern expressed by Judge Dearie in the Adeva case as to "whether claims under NY [labor law] exist for

---

[6] Saybolt contends, and Lauer does not dispute, that copies of these records are kept in the New Jersey office, while the originals are sent to Core Laboratories' headquarters in Houston, Texas. See Barbarise Aff. ¶ 9. This fact does not affect considerations of fairness and convenience in the choice between the Brooklyn and New Jersey fora in this case.

individuals employed in New Jersey who perform some percentage of their duties in New York." 2009 WL 648620, at *3.

Lauer contends that he has a stronger claim to the application of New York law than did the plaintiffs in Adeva "based on [Lauer's] New York residency, the substantial time he performed work in New York, and the fact that he paid New York State income taxes throughout his employment with Defendants." Opp. 15. Yet the undisputed figures provided by Saybolt reveal that Lauer spent an even greater proportion of his time working in New Jersey – approximately 85% – than did the plaintiffs in Adeva. See Adeva, 2009 WL 648620, at *1. ("According to defendant's calculations, plaintiff and most of the putative opt-in plaintiffs spent most of their time – an estimated 66% – during the relevant period working in New Jersey"). With respect to Lauer's New York residency and his payment of income taxes in New York, Lauer's obligation to pay taxes in New York and his entitlement as a resident to services provided by the state derive independently from New York law, and Lauer cites no support for the proposition that any such obligations or entitlements have any bearing on which forum's labor laws should apply in this case. Accordingly, under the authority of the Adeva decision the forum considerations in this case tip in favor of a New Jersey forum.

### D. Public Interest Considerations

Finally, public interest considerations include calendar congestion, and the interests of justice and fairness. Zaitsev, 2005 WL 3088326, at *4. The Court is not aware of a meaningful difference between the respective caseloads of this Court and the District of New Jersey and is quite certain that the parties would receive a fair trial in either district. This Court has previously noted that, "cases should generally be tried where the

11

events giving rise to them have occurred, or where the parties involved live." Id.  Here, the residence of the parties at this stage of the litigation balances equally between New York and New Jersey.  However, the events giving rise to this action occurred overwhelmingly in New Jersey.  Lauer and his proposed class worked out of Saybolt's New Jersey office.  Saybolt maintains the relevant business records in New Jersey and conducts the substantial majority of its business operations, including the hiring of employees, in New Jersey.  Saybolt does not maintain an office in New York.  Under these circumstances, the Court deems it appropriate to exercise its discretion in favor of a transfer to the District of New Jersey.

## CONCLUSION

For the foregoing reasons, defendants' motion for transfer of venue to the District of New Jersey is granted.

SO ORDERED.

Dated:      Brooklyn, New York
            May 17, 2010

                                            /s/
                                    I. Leo Glasser
                                    United States Senior District Judge


**Copies of the foregoing memorandum and order were electronically sent to:**

Counsel for the Plaintiff
Andrew R. Frisch
Morgan & Morgan, P.A.
7450 Griffin Road, Suite 230
Fort Lauderdale, FL 33314

Counsel for the Defendant
Joseph Maddaloni , Jr.
Trenk DiPasquale Webster Della Fera & Sodono P.C.
100 Southgate Parkway
Morristown, NJ 07960